IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ASIAN BRIGHT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CITY OF ATLANTA, GEORGIA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff **Asian Bright** brings this civil action for relief and damages against Defendant **City of Atlanta, Georgia** based on the following allegations and causes of action.

## NATURE OF THE ACTION

1. This action to correct unlawful employment practices by the City of Atlanta ("Atlanta"), a Georgia municipality, arises under the Americans with Disabilities Act, as amended, ("ADAA"), 42 U.S.C.A. §§ 12203(a) and 12112(a); and Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C.A. § 2000e-3(a).

1

2. Plaintiff Asian Bright ("Bright"), a former employee in Atlanta's Public Works Department, suffers from clinically diagnosed depression and anxiety. For over a year, her treatment and recovery required her to obtain modifications in her work schedule.

3. But, in the spring of 2024, Bright's accommodations were rescinded and she was pressured to accept a transfer that was a de facto demotion. In response, she filed an internal complaint of disability discrimination.

4. Bright's complaint also made allegations that she had previously experienced inappropriate sexual banter by senior leadership in her department.

5. Within hours of Bright lodging her complaint, she was terminated. She challenges her firing under the retaliation provisions of Title VII and the ADA. She also alleges discrimination under the ADA.

6. Bright seeks economic damages, including back pay and lost benefits; noneconomic compensatory damages; punitive damages; liquidated damages; and attorneys' fees and costs of litigation.

## THE PARTIES

7. Bright is a resident of Fulton County, Georgia. During the time of the events alleged in this Complaint, she was employed as a special projects coordinator for Atlanta's Department of Public Works.

8. Atlanta is a municipal entity created by the laws of the State of Georgia, and it is an entity subject to suit under the ADA and Title VII.

## PERSONAL JURISDICTION

9. Atlanta may be served with proper process at the City Hall address at 55 Trinity Ave., Atlanta, Georgia 30303.

## SUBJECT-MATTER JURISDICTION AND VENUE

10. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

11. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Bright timely filed her original charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2024-06900, and filed her amended charge on October 1, 2024, incorporating a Title VII retaliation claim. A copy of the amended charge is attached as Exhibit A.

13. Bright subsequently received a Right-to-Sue letter from the EEOC on

October 24, 2024, which is attached as Exhibit B.

14. Bright timely files her claims under the ADA and Title VII.

## FACTUAL ALLEGATIONS

15. Bright was hired by Atlanta's municipal government in February 2021 as a code enforcement officer with the City's Solid Waste Education and Enforcement Team.

16. In July 2021, Bright was promoted to the role of special projects coordinator for the Public Works Department.

17. Bright's duties as a special projects coordinator included engaging inquiries by municipal officials and reviewing the feasibility of initiatives related to solid waste disposal, beautification, and fleet management.

18. In late spring and summer of 2023, Bright suffered a severe mental health crisis related to her history of chronic depression and anxiety.

19. Bright disclosed her health struggles to her supervisor, Nicole Swift, and requested accommodation under the ADA that would allow her to shift to full time telework instead of the hybrid schedule of three days in the office and two days remote that she had previously worked.

20. Initially, the human resources ("HR") department resisted Bright's accommodation and encouraged Bright to take an unpaid leave under the Family

and Medical Leave Act, an option that Bright could not afford.

21.  At several points in the summer of 2023, Swift and the Commissioner of the Public Works Department, Al Wiggins, both pushed Bright to take an extended medical leave for what Wiggins referred to as a "mental health reset."

22.  Eventually, in mid-summer 2023, Bright was permitted to resume a remote work schedule for six months, with the provision that she would be available for in-person site inspections at the discretion of her leadership team.

23.  Bright executed her duties without any indication from her department that she was performing ineffectively or failing to meet the obligations of her position.

24.  In January 2024, at the expiration of her six month accommodation, Bright applied to extend her telework arrangement.

25.  Bright was initially told that her request to extend the remote work accommodation would be denied on the grounds that her department preferred her role to entail significant in-person interaction with the community and public stakeholders.

26.  For the first quarter of 2024, the department agreed to leave Bright's telework status in place as it considered her request for extension.

27. In early 2024, Bright also applied for and obtained intermittent leave under the Family and Medical Leave Act covering up to five days per month for treatment sessions for her chronic depression and anxiety and for decompression periods when she was dealing with heightened stress levels.

28. On April 2, 2024, Bright was abruptly informed that she would be transferred back to the code enforcement unit, with the expectation that she would work a primarily in-person schedule.

29. Bright raised two sets of concerns with her supervisor: that the transfer represented a demotion to a job she had held as an entry level city employee three years earlier, and that the role would be destabilizing to her recovery given the high stress and confrontational nature of code enforcement assignments.

30. On April 3, 2024, Bright emailed Commissioner Wiggins to object to the transfer. She argued that the reassignment was punishment for her persistence in seeking a telework accommodation.

31. The day after Bright sent the email to Wiggins, he requested a full status report on all of her open projects, a request she had never received before. Bright viewed the request as a subtle warning that her performance was suddenly being subjected to more scrutiny.

32. Also on April 3, the HR offered Bright a second proposal that would involve her return to the code enforcement unit, but with a title as a special projects officer with permission to work a partial remote schedule.

33. Bright saw the ostensible compromise as problematic. The responsibilities of the new position were not clearly defined, and she was given no clear explanation as to what amount of time she would be expected to work remotely and in-person.

34. Bright viewed the dialogue over the transfer as part of the ADA's interactive process for assessing accommodation. But on April 4, Bright noticed that all of her ongoing work assignments were being redistributed to other staff members.

35. On April 5, 2024, Bright wrote an emailed message to the city's HR leadership and a number of other senior level Atlanta officials titled "Department of Public Works-Hostile Work Environment".

36. In her message, in a section labeled "ADA discrimination/retaliation", Bright challenged the withdrawal of her initial accommodations and what she described as a viewpoint that she was "not well suited for" her current job because of her medical condition.

37. Bright also alleged that during 2022 and 2023, prior to her switch to

remote status, she had been subjected to unwanted sexualized banter about her appearance and sexual prowess by Wiggins and the Deputy Operating Officer in the Public Works Department, Kwadwo Atta.

38. The HR Director for the Public Works Department, Kim Frazier, immediately responded to Bright's email with a message that she viewed Bright's claims as serious and that she wanted to meet in-person to discuss that same day.

39. When Bright reported to the office later in the day on April 5, instead of conducting a preliminary interview, Frazier informed Bright that her employment was being terminated.

40. Prior to her termination, Bright had never received any formal corrective action or performance counseling by her leadership, nor was she ever given notice that her job performance was deficient.

41. The normal protocol for municipal employees in Atlanta is that termination follows a path of progressive discipline and correction that permits employees a fair opportunity for course correction. That process was abandoned for Bright.

42. In addition, Atlanta's personnel policies require that allegations of discriminatory conduct merit investigation and review by the city's HR department. Instead of adhering to its usual procedures, Atlanta responded to

Bright's complaint with immediate termination.

43. The circumstances prior to April 5, 2024, including the refusal to extend accommodations that had worked successfully for approaching nine months, and her intended demotion, also infer that her underlying medical condition was a negative determinative factor in the decision to terminate her employment.

## CAUSES OF ACTION

## COUNT I

**(Retaliation in violation of the Americans with Disabilities Act as Amended, 42 U.S.C.A. § 12203(a))**

44. Plaintiff incorporates by reference the preceding factual allegations in this Complaint as though set forth fully and separately herein.

45. Plaintiff engaged in protected activity under the ADA in that she requested an extension of a reasonable accommodation for her qualifying medical impairment, a scheduling modification that has already been in place for over nine months.

46. Plaintiff further engaged in ADA protected activity by lodging an internal complaint of disability based discrimination.

47. Plaintiff's protected activity under the ADA was a but-for cause of her termination.

9

48. Defendant's retaliatory conduct under the ADA has caused Plaintiff to suffer monetary damages, including but not limited to back pay and front pay; loss of economic opportunity; and noneconomic damages including emotional distress and mental anguish.

## COUNT II

**(Retaliation in violation of Title VII, 42 U.S.C.A. § 2000e(a))**

49. Plaintiff incorporates by reference the preceding factual allegations in this Complaint as though set forth fully and separately herein.

50. Plaintiff engaged in protected activity under Title VII by making internal complaints to Defendant's HR department regarding unwanted, sexualized comments made to her by two members of the leadership team in the Public Works department.

51. Plaintiff's protected activity under Title VII was a but-for cause of her termination.

52. Defendant's retaliatory conduct under Title VII has inflicted various economic damages on Plaintiff, including but not limited to loss of back pay, loss of front pay, and loss of benefits, as well as noneconomic damages, including emotional distress and mental anguish.

## COUNT III

**(discriminatory termination, in violation of 42 U.S.C.A. § 12112(a))**

53. Plaintiff incorporates by reference the preceding factual allegations in the Complaint as thought set forth fully and separately herein.

54. Plaintiff had a disability under the ADA in that she suffered from a mental impairment in the form of clinical depression and anxiety that substantially limited her ability to perform the conditions of her employment without reasonable accommodation in the form of telework.

55. Defendant discriminated against Plaintiff based on her disability by terminating her rather than continue to extend accommodations it had recognized for a period of approximately nine months.

56. Defendant's discriminatory conduct under the ADA has caused Plaintiff to suffer monetary damages, including but not limited to back pay and front pay; loss of economic opportunity; and noneconomic damages including emotional distress and mental anguish.

## PRAYER FOR RELIEF

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

    A. Back pay, front pay, and lost benefits.

    B. Compensatory damages to the extent allowed by law.

C. Attorneys' fees and costs of litigation.

D. Prejudgment and post-judgment interest at the highest lawful rate.

E. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted this 22nd day of January, 2025.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

*s/Jerilyn Gardner*
Jerilyn Gardner
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Attorneys for Plaintiff Asian Bright**

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.